USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 5, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

              Defendant.

**MEMORANDUM**
**OPINION & ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Defendant Mathew Martoma is charged with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. The gravamen of the Indictment is that from about 2006 through July 2008, Defendant directed trading activity for his hedge fund employer on the basis of material non-public information supplied by a doctor participating in a clinical trial of a drug for use in treating Alzheimer's disease.

        On April 29, 2013, Defendant filed a motion for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). Defendant seeks information regarding the nature and timing of his alleged receipt of, and trades on, inside information, and the identities of all known co-conspirators. (Dkt. No. 23) For the reasons stated below, Defendant's motion will be granted insofar as the Government has agreed to identify Defendant's co-conspirators, but will otherwise be denied.

## BACKGROUND

        On November 20, 2012, Martoma was arrested on the basis of a twenty-one-page criminal complaint alleging one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17

C.F.R. § 240.10b-5, and 18 U.S.C. § 2. (Dkt. No. 1) On December 21, 2012, a grand jury returned an indictment charging the Defendant with the same offenses. (Dkt. No. 7)

With regard to the conspiracy count, the Indictment alleges that from about 2006 through July 2008, Defendant developed a corrupt relationship with a doctor (the "Cooperating Witness" or "CW") participating in a clinical trial of a drug for use in treating Alzheimer's disease. (Indictment ¶¶ 7-8) The drug was under development by Elan Corporation PLC and Wyeth. (Indictment ¶ 4) The CW "served as the chair of the Safety Monitoring Committee ('SMC')" for the clinical trial. (Indictment ¶ 5) During the 2006-08 time period, Defendant allegedly "arranged for approximately 42 consultations with the CW through [an] Expert Networking Firm[,]" which is a "business that arranged for paid consultations between financial industry clients and experts in various fields[,]" and which expressly advised participating clients and experts that they could not discuss information "not yet in the public domain." (Indictment ¶¶ 6, 8)

The Indictment alleges that, notwithstanding this instruction, "the CW provided [Defendant] with confidential [drug] safety data that had been disclosed to members of the SMC by Elan[,]" and that "[b]ased in part on this Inside Information, [Defendant] bought shares of Elan and Wyeth stock for his own portfolio and recommended that [his hedge fund employer do the same]." (Indictment ¶ 8) The Indictment further alleges that on July 17, 2008, the CW provided Defendant with the confidential final results of the clinical trial, which indicated that the drug was not efficacious for Alzheimer's disease. (Indictment ¶¶ 9-10) The CW allegedly conveyed this information to Defendant during a lengthy telephone conversation on July 17, 2008, and also by sending him a confidential 24-slide PowerPoint presentation that the CW had received from Elan. (Indictment ¶ 9) According to the Indictment, on the basis of this new,

2

negative information, Defendant "caused [his hedge fund employer] to sell virtually all of its approximately $700 million worth of Elan and Wyeth stock prior to the [p]ublic [a]nnouncement" of the clinical trial's final results, and to "engage in 'short sales' and various options trades designed to profit if the price of Elan and Wyeth securities were to fall after the [p]ublic [a]nnouncement." (Indictment ¶ 10) As a result of this trading activity, Defendant allegedly earned a $9.3 million bonus, and his employer's combined profits and avoided losses totaled approximately $276 million. (Indictment ¶ 11)

The Indictment also charges Defendant with two substantive counts of insider trading on the basis of his trading activity in Elan and Wyeth stock in July 2008 after he allegedly received inside information about the final results of the clinical trial. (Indictment ¶¶ 16-19)

The Government represents that "[o]n January 7, 2013 and January 15, 2013, [it] produced, with few exceptions, substantially all of the Rule 16 discovery then in its possession relating to the charges contained in the Indictment." (Gov't Br. 3-4) This discovery material was produced in a searchable database and includes materials from Defendant's hedge fund employer and the expert networking firm, including:

> dates on which . . . [D]efendant and the CW met or were scheduled to meet, dates of [clinical trial] SMC meetings, . . . the contents of confidential data presentations made by Elan to the members of the SMC in connection with these meetings[,] . . . e-mails (to the extent retained . . . ) reflecting communications between . . . [D]efendant, CW, and others about the [clinical trial] and complete detailed records of trading in Elan and Wyeth securities by . . . [D]efendant and others at the [h]edge [f]und [at which Defendant was employed].

(Gov't Br. 4)

On February 22, 2013, defense counsel sent a letter to the Government, requesting particulars for various allegations in the Indictment. (Apr. 29, 2013 Strassberg Decl. (Dkt. No.

3

25), Ex. D) The Government responded in a March 15, 2013 letter, which provides an overview of the Government's case and directs defense counsel's attention to certain discovery materials. (Dkt. No. 28)

On April 29, 2013, Defendant moved for a bill of particulars. (Dkt. No. 23) Defendant seeks particulars regarding:

> (1) the specific substance of the alleged inside information and the dates on which [Defendant] allegedly received such information; (2) the manner in which the one specific instance of supposed information alleged in the Indictment was purportedly sent to [Defendant]; (3) [Defendant's] alleged trading – or the trading that he recommended – based on the purported inside information; and (4) all alleged co-conspirators.

(Def. Br. 3 (Dkt. No. 24)) The Government filed a brief in opposition to Defendant's motion on May 13, 2013 (Dkt. No. 26), and Defendant filed a reply on May 20, 2013 (Dkt. No. 27).

## DISCUSSION

### I. LEGAL STANDARD

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "'prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" United States v. D'Amico, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (quoting United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988)). The decision to grant or deny a bill of particulars "rests within the sound discretion of the district court." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).

"A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." United States v. Gibson, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001). "Instead, its purpose is to supplement the facts contained in the indictment when necessary to enable defendants to identify

with sufficient particularity the nature of the charges against them." United States v. Gotti, No. 02 Crim. 743 (RCC), 2004 WL 32858, at *8 (S.D.N.Y. Jan. 6, 2004); United States v. Mandell, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) ("The standard for determining whether a bill of particulars is appropriate is based on necessity.").

"Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." Bortnovsky, 820 F.2d at 574; see also United States v. Walsh, 194 F.3d 37, 47 (2d Cir.1999) (a bill of particulars "is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means"). However, "[t]he Government d[oes] not fulfill its obligation merely by providing mountains of documents to defense counsel who [a]re left unguided as to which documents [the Government will use at trial]." Bortnovsky, 820 F.2d at 575.

## II. ANALYSIS

### A. Inside Information and Dates of Receipt

Defendant seeks particulars regarding "[t]he specific information that [Defendant] allegedly obtained from the Cooperating Witness" and "the specific dates on which such information is alleged to have been shared." (Def. Br. 13) Such particularization may be necessary where a defendant has been charged with an insider trading conspiracy, because "[t]he merits of such a charge depend heavily on the facts and context." United States v. Rajaratnam, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010). "A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it. But he can only do that if he knows what the information is and when it was conveyed." Id. at *2, *4-9 (ordering Government to particularize "the substance of the [inside] information provided" and "the dates(s) on which it was conveyed"); see also United

5

States v. Barnes, 158 F.3d 662, 666 (2d Cir. 1998) ("a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge").

### 1. Inside Information

Here, the Government has provided sufficient information about the substance of the inside information Defendant allegedly obtained. The Indictment alleges that Defendant sought and obtained "confidential safety data that had been disclosed to members of the SMC by Elan[,]" including "detailed confidential data about the closely-guarded and still-secret results of the [clinical trial provided] during meetings on or about July 15, 2008 and July 16, 2008" and "a 24-slide PowerPoint presentation[.]" (Indictment ¶¶ 8-9) The Complaint states that, from the summer of 2006 through mid-July 2008, the CW allegedly shared with Defendant "generally positive safety data [about the drug] which the CW was privy to through his participation in the [SMC]." (Cmplt. ¶ 13; see also Cmplt. ¶ 33(b)) The Complaint further states that the CW provided Defendant with charts about adverse side effects of the drug, data on the drop-out rate of patients in the study, and observations about the efficacy of the drug. (Cmplt. ¶ 25) Then, on or about July 17, 2008, the CW allegedly shared with Defendant newly obtained data that "showed that Alzheimer's disease symptoms in patients taking the drug consistently got worse over time, as opposed to stabilizing or even improving." (Cmplt. ¶ 15; see also Cmplt. ¶ 33(c)-(d)) Thus, contrary to Defendant's argument (Def. Reply Br. 3), the Government has provided details about the nature of the inside information obtained during the entire course of the alleged conspiracy, and not just during July 2008.[1]

---

[1] The Government has also produced to the defense all of the SMC presentations and minutes in its possession. (See Mar. 15, 2013 Gov't Ltr. at 2; Gov't Br. 4)

6

In sum, this is not a case in which the Government has provided a "bare bones" conspiracy charge that leaves Defendant incapable of preparing for trial. See Barnes, 158 F.3d at 666. Rather than vague allegations that unspecified inside information was obtained about a company's prospects, the Government has provided numerous specific details about the inside information Defendant allegedly obtained about the clinical trial. It is clear from the charging instruments that the Government will argue that the CW funneled to Defendant confidential data that the CW had received as a result of his position on the SMC. This data was largely positive in nature until the final results of the clinical trial came in, and the Government will contend that Defendant based his trading strategy on this inside information during the two-year period charged in the Indictment. Armed with this understanding of the Government's case and the discovery materials that have been produced, Defendant is amply equipped to prepare for trial. See United States v. Bonventre, 10 Cr. 228 (LTS), 2013 WL 2303726, at *5-7 (S.D.N.Y. May 28, 2013) (denying request for bill of particulars when indictment "describe[d] specific situations in which [the defendant was] alleged to have committed fraud[,] . . . the types of documents that [the defendant was] alleged to have falsified[,] . . . and specific acts of fraud that [the defendant] was allegedly involved in concealing. . . ."); United States v. Nacchio, No. 05 CR 00545 (EWN), 2006 WL 2475282, at *6 (D. Colo. Aug. 25, 2006) (holding that government satisfied its obligations by "direct[ing] Defendant to the sources which contain examples of the material nonpublic information upon which the Government relies" and by proving "specific examples of when Defendant obtained the material nonpublic information, from whom he acquired the information, and the specific product lines and business units [in question]"). Cf. Rajaratnam, 2010 WL 2788168, at *4-9 (ordering bill of particulars where indictment alleged exchange of inside information and provided little or no detail beyond the name of the securities at issue);

United States v. Contorinis, No. 09 Cr. 1083 (RJS), slip op. at 1 (S.D.N.Y. May 5, 2010) (ordering bill of particulars where indictment alleged exchange of inside information related to company's acquisition without further detail).

2. **Dates of Receipt**

The Government has also provided sufficient information concerning the dates Defendant allegedly received the inside information. The Indictment alleges that Defendant "arranged for approximately 42 consultations with the CW through [an] [e]xpert [n]etworking [f]irm" (Indictment ¶ 8), and that those consultations "took place shortly after Elan had presented confidential data to the CW at [SMC] meetings." (Indictment ¶ 8) The Government represents that it has produced calendars, phone records, and emails from the expert networking firm reflecting these consultations. (Gov't Br. 10) Accordingly, Defendant has sufficient information to determine the dates of his alleged interactions with the CW at which inside information was allegedly provided.

Defendant complains that "he cannot be forced to research and defend 42 consultations over [a] nearly two-year period. . . ." (Def. Br. 13) However, the Government has directed Defendant's attention to five specific consultations that closely followed SMC meetings. (Cmplt. ¶ 23; see also Mar. 15, 2013 Gov't Ltr. at 2 (directing defense counsel to Cmplt. ¶ 23); Gov't Br. 4 (noting that its March 15, 2013 letter "directed the defense to discovery for records reflecting items discussed during five particular SMC meetings"). The Government has also made clear that it will focus, in particular, on the July 17, 2008 telephone call between Defendant and the CW, during which they discussed the negative final results of the clinical trial and the PowerPoint presentation. (Indictment ¶ 9; Cmplt. ¶ 15, 33(d); Mar. 15, 2013 Gov't Ltr. at 2)

8

The Court concludes that the Government has provided sufficient information about the dates that the Defendant allegedly received inside information to prevent surprise and to permit Defendant to prepare for trial. See United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."); Bonventre, 2013 WL 2303726, at *6 ("Courts have routinely denied requests for bills of particulars concerning the 'wheres, whens and with whoms' of the crime."); United States v. Meregildo, No. 11 Cr. 576 (WHP), 2012 WL 4378047, at *6-7 (S.D.N.Y. Sept. 24, 2012) (denying request for "the dates and locations of any meetings or conversations [defendant] participated in that furthered the conspiracies" because "the Government is not required to set out precisely each and every act committed by the conspirators in furtherance of the conspiracy").

### B. Means of Delivery of Inside Information

Defendant seeks particulars regarding

> [t]he means by which the Cooperating Witness "sent" [Defendant] the confidential presentation slides, including: (i) the date and time that the slides were allegedly sent; (ii) the method by which the slides were allegedly sent; [and] (iii) any circumstances related to [Defendant's] ability to review the slides, including whether the slides were transmitted electronically with a password or encryption key for accessing the slides.

(Def. Br. 13-14) Defendant contends that "[t]his information is particularly critical as the Government in discovery has been unable to identify any e-mail or other communication purporting to send [Defendant] either the presentation slides referenced in the Indictment or a password to open such slides." (Def. Br. 7)

"It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." United States v. Feola, 651 F. Supp. 1068, 1132

9

(S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989). Here, Defendant's request for more detail about the delivery of the PowerPoint presentation amounts to a request for this type of information – that is, information regarding the means by which acts were performed in furtherance of the conspiracy. While the details Defendant seeks might be helpful to his defense, the Government is not obligated to provide it.

Furthermore, "the [G]overnment need not provide particulars where it has none." Rajaratnam, 2010 WL 2788168, at *9. Here, the Government has represented that it has no such document "constituting a record of how the PowerPoint document was transmitted from the CW to [D]efendant." (Gov't Br. 13 n.6) In such circumstances, the Government may "rely primarily or exclusively on testimony from cooperators [who] . . . may only be able to testify generally to providing [Defendant] with inside information." Rajaratnam, 2010 WL 2788168, at *9.

### C. Trading Activity

Defendant requests particulars regarding

> [t]he specific purchases of, sales of, or other trades involving Elan and/or Wyeth that [Defendant] allegedly made, or directed others to make, on the basis of the inside information that the Cooperating Witness allegedly provided him, including: (i) the date of each purchase, sale, or other trade; (ii) the number and type of shares purchased; [and] (iii) the price of each purchase, sale, or other trade . . . ."

(Def. Br. 14) Defendant contends that the Government has identified only two dates in July 2008 on which trading allegedly occurred, but yet has charged Defendant with a conspiracy spanning two years. (Id. at 7)

"[D]efendants are not entitled to an itemization of trades at issue in the conspiracy counts" of insider trading cases, however. Rajaratnam, 2010 WL 2788168, at *9 (denying request for particulars regarding trading activity in case "spanning six years and involving dozens of stocks, dozens of co-conspirators, and a total of seven conspiracies" where the

10

defendant cited "no case in which a court has ordered such particularization," and the court was "not persuaded that more detail [was] necessary to prepare a defense"); see also Bonventre, 2013 WL 2303726, at *6-7 (denying request for bill of particulars "identifying the specific arbitrage trades in which [the defendant] was involved that the Government alleges are fraudulent"). Here, the Government has provided detailed information about Defendant's trading activity with regard to the two substantive counts in the Indictment. (Mar. 15, 2013 Gov't Ltr. at 2-3) It is not required to provide such detail with regard to the conspiracy count.

Defendant also seeks, "with respect to purchases, sales, or other trades entered into by anyone other than [Defendant], information as to how [Defendant] allegedly recommended or caused each purchase, sale, or other trade." (Def. Br. 14) As discussed above, however, defendants are not entitled to particulars regarding "the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." Feola, 651 F. Supp. at 1132. Defendant is not entitled to details regarding the means by which he directed others to trade on the basis of the inside information he obtained from the CW.

### D. Co-Conspirators

The Government has agreed that it will identify – by July 31, 2013 – all known co-conspirators. The Government has further agreed to disclose any co-conspirators identified after that date no later than thirty days prior to trial.[2] (Gov't Br. 13-15) Defendant consents to the July 31, 2013 initial disclosure date (Def. Reply Br. 7), but argues that the Government should not be permitted to add co-conspirators based on information in its possession as of July 31, 2013. (Id. at 7-8) Defendant contends that "the Government could have information about a

---

[2] No trial date has yet been scheduled.

co-conspirator as of July 31, 2013, but could decide for strategic reasons to withhold such information until a later date." (Id.)

The Federal Rules of Criminal Procedure provide that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." Fed. R. Crim. P. 7(f). This rule reflects the fact that "a bill of particulars confines the government's proof to the particulars furnished." United States v. Perez, 940 F.Supp. 540, 550 (S.D.N.Y.1996) (citation omitted). Without the ability to amend, "the consequence of granting the request would be to unduly restrict the government's ability to present its case." Id.; see also United States v. McPherson, No. 08 Cr. 1244, 2009 WL 4756470, at *2 (S.D.N.Y. Dec. 11, 2009) ("[T]he court is required to balance restricting the government's proof against protecting defendants from surprise.") (quotation omitted); United States v. Samsonov, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) (a bill of particulars "must not be misused to . . . foreclose the Government from using proof it may develop as the trial approaches").

The Government has represented that it will endeavor in good faith to identify all co-conspirators by July 31, 2013. The Court will not foreclose amendments that identify additional co-conspirators after July 31, 2013, as long as the disclosure date is at least thirty days prior to trial. Cf. United States v. Mulder, 273 F.3d 91, 100 (2d Cir. 2001) (holding that district court did not abuse its discretion in allowing bill of particulars to be amended during trial when testimony concerning new particulars occurred three weeks after amendment was made and defendant had access to discovery concerning new particulars for ten months prior to testimony). In the event that the Government discloses additional co-conspirators after July 31, 2013, and Defendant believes that the Government has acted in bad faith, the Court will address the issue at that time.

## CONCLUSION

Defendant's motion for a bill of particulars is granted to the extent that the Government is ordered to identify, by July 31, 2013, all known co-conspirators. No later than thirty days before trial, the Government will identify any co-conspirators that it identified in good faith after July 31, 2013. Defendant's motion for a bill of particulars is otherwise denied.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

Dated: New York, New York
       June 5, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge