UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/9/2014

UNITED STATES OF AMERICA,

- v.-

MATHEW MARTOMA,

Defendant.

**MEMORANDUM
OPINION & ORDER**

S1 12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Mathew Martoma is charged with conspiracy to commit securities

fraud, in violation of 18 U.S.C. § 371, and with two counts of securities fraud, in violation of 15

U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2.

(Superseding Indictment (Dkt. No. 61))  This memorandum opinion and order addresses

Defendant's request that certain motions in limine be filed under seal, and that the courtroom be

closed when these motions in limine are discussed.

## BACKGROUND

On December 6, 2013, Martoma and the Government filed cross-motions in

limine concerning certain evidence related to Martoma's expulsion from Harvard Law School in

1999 (the "Law School Evidence").  The Government contends that Martoma

(1) used computer software to generate a forged law school transcript, and then submitted
the falsified transcript to Federal judges in connection with his application for a
clerkship;

(2) was then interviewed by several judges, on the basis of the falsified law school
transcript;

(3) during disciplinary proceedings at Harvard Law School, altered the date of an e-mail
he submitted as mitigating evidence; and

(4) during the disciplinary proceedings, submitted a computer forensic report concerning the date on which the email had been sent, without disclosing to the disciplinary committee that he had formed the company that had prepared the forensic report.

(Govt. Motion in Limine to Admit Evidence Concerning the Defendant's Expulsion from Harvard Law School ("Govt. Br.") at 1, 3-5)

The Government does not seek to introduce the Law School Evidence during its case-in-chief (see Govt. Opposition to Defendant's Motion to Exclude Evidence Concerning Events Unrelated to the Charged Offenses ("Govt. Opp.") at 1), but argues that such evidence may be admissible "to rebut particular arguments made by the defendant" or for impeachment purposes. (Id. at 1 & n.1) More specifically, the Government contends that "[i]f the defendant places the lack of forensic evidence at issue in his defense," the Law School Evidence is "relevant to and probative of the defendant's knowledge of the importance of minimizing electronic evidence that could establish his guilt and his capacity to alter such evidence to fit his version of events."[1] (Id. at 2) The Government also contends that the Law School Evidence may be admissible for purposes of impeachment under Fed. R. Evid. 608(b). (Id. at 1 n.1)

Martoma responds that the evidence is not admissible under Fed. R. Evid. 404(b) and 403. (See Defendant's Memorandum of Law in Opposition to the Government's Motion to Admit Evidence Concerning Events Unrelated to the Charged Offenses ("Def. Opp.") at 9-22) The Defendant does not address possible use of the Law School Evidence for impeachment. (See id.)

-------------------------------------------

[1] Dr. Sidney Gilman, a Government witness who allegedly provided inside information to Martoma, is expected to testify that he emailed a PowerPoint presentation to Martoma in mid-July 2008 containing the results of a Phase II clinical trial of a drug thought to be efficacious for Alzheimer's disease. There is no computer forensic evidence corroborating Dr. Gilman on this point, however. The University of Michigan – on whose server the email was allegedly sent – does not retain email from 2008, and apparently the computer devices associated with Martoma do not contain this email. (Govt. Br. 2; Govt. Opp. 3 n.3)

2

Pending before the Court is the Defendant's application to seal all papers concerning the motions in limine regarding the Law School Evidence, and related request to "close from the public any hearing on either t[he] Request to Seal or the motion[s] in limine and related papers."[2] (Dec. 6, 2013 Def. Ltr.) Defendant argues that sealing and closure are appropriate because (1) the Law School Evidence is a "source of great embarrassment to Mr. Martoma"; and (2) "this information would risk tainting prospective jurors and biasing them against Mr. Martoma." (Id. at 1)

The Government contends that the Defendant's broad sealing and closure request should be denied, but states that it "would not oppose a more limited sealing order, to the extent deemed necessary by the Court, that would provide for the limited redaction of material in public filings and that would be limited in duration." (Dec. 14, 2013 Govt. Ltr. 1) As to timing, the Government suggests that the motions in limine could remain sealed until a jury is selected. (Id. at 4) As to redactions, the Government states that the motions in limine could be redacted "to block the public from access to certain facts (such as those with lesser relevance, greater salaciousness, or those that go beyond the defendant's prior admissions) while allowing the public to know of the core issues presented." (Id.) The Government does not articulate what facts in the motions in limine it believes go to "the core issues presented," nor the facts that are of "lesser relevance [and] greater salaciousness."

---

[2] The Government did not electronically file its motion in limine concerning the Law School Evidence because the Defendant requested that all papers concerning this issue be filed under seal. (Dec. 6, 2013 Govt. Ltr.; Dec. 6, 2013 Def. Ltr.) The parties ultimately agreed that all documents concerning this issue would not be publicly filed until this Court reached a decision concerning the Defendant's sealing request. (Dec. 6, 2013 Govt. Ltr.; Dec. 9, 2013 Def. Ltr.; Dec. 14, 2013 Govt. Ltr. 1 n.1)

# DISCUSSION

## I.    LEGAL STANDARD FOR SEALING AND CLOSURE

In evaluating whether sealing and closure are appropriate, courts must consider (1) "the common law right of public access to judicial documents" and (2) "the public and the press['s] . . . 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006) (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)).

It is, of course, beyond dispute that "the press and general public have a constitutional right of access to criminal trials." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603 (1982). Moreover, with respect to pre-trial proceedings in criminal cases, the Second Circuit has observed that "[i]t makes little sense to recognize a right of public access to criminal courts and then limit that right to the trial phase of a criminal proceeding, something that occurs in only a small fraction of criminal cases." In re The Herald Co., 734 F.2d 93, 98 (2d Cir. 1984).

Accordingly, "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Comm'ncs, Inc., 435 U.S. 589, 597 (1978). Courts "administer [this right] by balancing the [objecting party's] interest in confidentiality and privacy against the public's interest in inspection." In re Application of New York Times Co. to Unseal Wiretap & Search Warrant Materials, 577 F.3d 401, 405 (2d Cir. 2009). In "weighing the interests advanced by the parties in light of the public interest and the duty of the courts. . . .[there] is [a] presumption . . . in favor of public access to judicial records." Nixon, 435 U.S. at 602.

"Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" Lugosch, 435 F.3d at 119. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" Lugosch, 435 F.3d at 119 (citing Amodeo I, 44 F.3d at 145). The Second Circuit has held that "the public's common-law right . . . extend[s] to documents considered by the court in orders disposing of substantive pretrial motions." United States v. Wolfson, 55 F.3d 58, 61 (2d Cir. 1995).

"Once the court has determined that . . . documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." Lugosch, 435 F.3d at 119. The weight is "'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")). "[A]fter determining the weight of the presumption of access, the court must 'balance competing considerations against it' . . . [such as] 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Id. at 120 (quoting Amodeo II, 71 F.3d at 1050).

"In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" Id. (quoting Hartford Courant Co., 380 F.3d at 91). "The

public's First Amendment right of access to criminal proceedings and to documents submitted in them, however, is not all-encompassing." Wolfson, 55 F.3d at 60.

The Second Circuit has "endorsed two approaches to determine whether the First Amendment right of access extends to particular judicial records." In re Application of the New York Times Co. to Unseal Wiretap & Search Warrant Materials, 577 F.3d at 409. "First, the public has a right to gain access to judicial records (1) that 'have historically been open to the press and general public,' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" Id. (quoting Hartford Courant Co., 380 F.3d at 92). "Second, . . . the First Amendment protects access to judicial records that are 'derived from or a necessary corollary of the capacity to attend the relevant proceedings.'" Id. (quoting Hartford Courant Co., 380 F.3d at 93).

The Second Circuit has held that "documents submitted to a court for its consideration in a . . . motion are – as a matter of law – judicial documents to which a strong presumption of [immediate public] access attaches, under both the common law and the First Amendment." Lugosch, 435 F.3d at 121, 126 (finding exhibits attached to a motion for summary judgment to be judicial documents to which a presumption of immediate public access attaches). Moreover, a qualified First Amendment right of access extends "to a pretrial hearing on a . . . motion to preclude the use of certain evidence at trial," as well as to "[w]ritten documents filed in connection with pretrial motions." In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987). "Access to written documents filed in connection with pretrial motions is particularly important . . . where no hearing is held and the court's ruling is based solely upon the motion papers." Id.

"A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry," however. Lugosch, 435 F.3d at 120. "Courts must balance the right [of access] against other important values, like the Sixth Amendment right of the accused to a fair trial . . . and the defendant's . . . privacy interests." United States v. Rajaratnam, 708 F. Supp. 2d 371, 374-75 (S.D.N.Y. 2010). Accordingly, "'[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d at 116). "'Broad and general findings . . . are not sufficient to justify closure,'" however. Id. (quoting In re New York Times Co., 828 F.2d at 116). Moreover, in light of the constitutional values at stake, "'documents used by parties [in connection with substantive pre-trial motions] . . . should not remain under seal absent the most compelling reasons,'" and the "presumption [of public access to such motion papers] is of the highest [order]." Id. at 123 (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982)) (emphasis added in Lugosch).

As to courtroom closure, the Second Circuit has instructed that – where the First Amendment right of access is applicable – closure "should be invoked only upon a showing of a significant risk of prejudice to the defendant's right to a fair trial or of danger to persons, property, or the integrity of significant activities entitled to confidentiality, such as ongoing undercover investigations or detection devices." See In re The Herald Co., 734 F.2d 93, 100 (2d Cir. 1984). Although closure need not "be the least restrictive means possible to avoid the perceived risk . . . [t]he closure should be tailored to the circumstances of the perceived risk," [and] "[t]he trial judge must articulate the basis for any closure order." Id.

Drawing on these principles, the Second Circuit has articulated a four-step process "that a district court must follow in deciding a motion for closure":

> First, the district court must determine, in specific findings made on the record, if there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent. Compelling interests may include the defendant's right to a fair trial; privacy interests of the defendant, victims or other persons; "the integrity of significant [government] activities entitled to confidentiality, such as ongoing undercover investigations or detection devices"; and danger to persons or property. Second, if a substantial probability of prejudice is found, the district court must consider whether "reasonable alternatives to closure cannot adequately protect" the compelling interest that would be prejudiced by public access. Third, if such alternatives are found wanting, the district court should determine whether, under the circumstances of the case, the prejudice to the compelling interest "override[s] the qualified First Amendment right of access." Fourth, if the court finds that closure is warranted, it should devise a closure order that, while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose.

United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (quoting In re The Herald Co., 734 F.2d at 100; Press-Enter. Co. v. Superior Court, 478 U.S. 1, 9, 14 (1986) ("Press-Enter. II")).[3]

## II.   ANALYSIS

Defendant Martoma argues that sealing and closure regarding the motions in limine are appropriate because (1) the Law School Evidence is a "source of great embarrassment to Mr. Martoma"; and (2) "this information would risk tainting prospective jurors and biasing them against Mr. Martoma." (Dec. 6, 2013 Def. Ltr. at 1)

---

[3] Courts in this Circuit have also applied the Doe and In re The Herald four-factor test in connection with deciding sealing motions. See, e.g., United States v. Haller, 837 F.2d 84, 86 (2d Cir. 1988) (decision whether to unseal plea agreement governed by In re The Herald); Rajaratnam, 708 F. Supp. 2d at 375 n.3 ("The Second Circuit has instructed that, in deciding whether to close a proceeding or seal a document, a court must follow [the] four steps [of Doe] . . . ."); United States v. Zazi, Nos. 09-CR-663 (RJD), 10-CR-0019 (RJD), 2010 WL 2710605, at *2 (E.D.N.Y. June 30, 2010) ("In deciding whether to unseal the documents, the Court is called upon to consider . . . legitimate and competing concerns. . . . The Second Circuit has attempted to reconcile these . . . competing interests by setting forth a four-prong test [in Doe]. . . .").

As an initial matter, Martoma does not acknowledge the strong presumption of public access that attaches to motion in limine papers submitted to a court in connection with a criminal proceeding, nor does he address the standard that must be met to overcome the presumption of public access. Martoma instead contends that the "good cause" standard that applies to motions for a protective order during discovery is the standard that applies here. (See Dec. 6, 2013 Def. Ltr. 2-3) As discussed above, however, the standard for sealing "judicial documents" – to which the presumption of access attaches – is much higher than "good cause." Indeed, sealing and closure are not appropriate as to such documents – and hearings concerning the issues they raise – "'absent the most compelling reasons.'" Lugosch, 435 F.3d at 123 (quoting Joy, 692 F.2d at 893) (emphasis added in Lugosch). Accordingly, the "good cause" cases cited by Martoma (Dec. 6, 2013 Def. Ltr. at 2; Dec. 20, 2013 Def. Ltr. at 2 & n.2, 3) are not persuasive. See United States v. Bulger, 283 F.R.D. 46, 48-54 (D. Mass. 2012) (addressing whether good cause existed under Fed. R. Crim. P. 16(d) to issue protective order concerning discovery material); Schiller v. City of New York, Nos. 04 Civ. 7922 (KMK) (JCF), 04 Civ. 7921 (KMK) (JCF), 2007 WL 1299260, at *1-3 (S.D.N.Y. May 4, 2007) (addressing whether good cause existed for defendant's designation of a document as "confidential" under protective order).[4]

---

[4] Martoma's reliance on United States v. Rajaratnam, 708 F. Supp. 2d 371, 374-77 (S.D.N.Y. 2010) is likewise misplaced. In Rajaratnam, the court approved a procedure that (1) allowed a party submitting Title III wiretap evidence in support of a motion to file that evidence under seal and (2) gave interested parties an opportunity to object. Id. at 377. The trial judge would then determine whether redactions were warranted before this material was publicly filed. Id. The court's decision turned on the fact that the material at issue was the product of Title III wiretaps that would be the subject of a motion to suppress on grounds that the interceptions were unlawfully obtained. Id. The court concluded that 'because defendants' 'privacy and fair trial interests' are 'at their zenith' before the [Title III] material has been tested [in connection with a motion to suppress] . . . the scales at present tip more heavily in the direction of sealing." Id.

Under the Doe four-factor test, this Court must first consider whether "there is a substantial probability of prejudice to a compelling interest of the defendant . . . which closure [and sealing] would prevent." Doe, 63 F.3d at 128. Martoma contends that disclosure of the Law School Evidence would subject him to great embarrassment. (Dec. 6, 2013 Def. Ltr. at 1) "The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access," of course. Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998).

The Second Circuit has instructed that

> [i]n determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public. . . .

> The nature and degree of injury must also be weighed[,] . . .[and] [t]he court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.

Amodeo II, 71 F.3d at 1051. "[M]ost of the cases in which courts have concluded that the privacy interests of individuals were sufficient to overcome the presumption of access involve illness or sensitive personal financial information." Lytle v. JPMorgan Chase, 810 F. Supp. 2d

---

(quoting In re Globe Newspaper Co., 729 F.2d 47, 59 (1st Cir. 1984)). Central to the Rajaratnam decision, however, is the recognition that the Title III interceptions at issue went directly to the guilt or innocence of the defendant: "As a very practical matter, if untested [Title III] material is unsealed but then suppressed, it will likely be impossible to undo the damage done." Id. The Rajaratnam court also emphasized that the disclosure of "untested" Title III material jeopardized the privacy interests of "innocent third parties." Id. at 374-76, 376 n.4. The Law School Evidence at issue here does not go directly to the guilt or innocence of the Defendant, nor does it implicate the privacy interests of innocent third parties. There is likewise no argument that the Law School Evidence was unlawfully obtained.

616, 629 (S.D.N.Y. 2011). Furthermore, although courts consider the defendant's privacy interest, it is generally "'[t]he privacy interests of <u>innocent third parties</u> . . . [that] weigh heavily in a court's balancing equation.'" <u>Amodeo II</u>, 71 F.3d at 1050 (emphasis added) (quoting <u>In re Newsday, Inc.</u>, 895 F.2d 74, 79 (2d Cir. 1990)).

 Here, the core elements of the Law School Evidence are not in dispute. It is undisputed that (1) Martoma falsified the grades reflected in his law school transcript, changing several Bs to As; (2) copies of the falsified transcript were then submitted to twenty-three U.S. Court of Appeals judges in support of Martoma's clerkship applications; (3) Martoma then interviewed for a clerkship with three federal judges, knowing that the interviews were premised on his falsified law school record; (4) when his conduct became the subject of a disciplinary proceeding at Harvard Law School, he submitted a computer forensic report concerning a disputed email without disclosing to the disciplinary committee that he was an owner of the computer forensic company that had prepared the report; and (5) he was expelled as a result of his misconduct. (<u>See</u> Govt. Br., Exs. A at 1-2, 7 and C; Defendant's Memorandum of Law in Support of His Motion to Exclude Evidence Concerning Events Unrelated to the Charged Offenses ("Def. Br.") at 4-6; Def. Opp. at 8) The reliability of the information weighs against Martoma's claimed privacy interest. <u>Amodeo II</u>, 71 F.3d at 1051.

 The information at issue also does not involve the type of medical, health-related, family, or personal financial matter to which courts grant the greatest protection. Moreover, because the right to practice law is a state-granted privilege that puts an individual's character and fitness at issue, this type of dishonesty in law school – and in connection with obtaining an important position in the federal courts – cannot be said to have "no public ramifications." <u>Id.</u>; <u>cf. Baird v. State Bar of Ariz.</u>, 401 U.S. 1, 6 (1971) (recognizing that a state "has a legitimate

interest in determining whether [an applicant] has the qualities of character and the professional competence requisite to the practice of law").

The Court concludes that the embarrassment Martoma will suffer if the Law School Evidence is disclosed does not trump the presumptive right to public access that attaches to substantive pre-trial motions.

Martoma also argues that "there is a substantial probability of prejudice" to his Sixth Amendment right to a fair trial if the motions in limine are not sealed and closure is not granted. (Dec. 6, 2013 Def. Ltr. at 1) This Court recognizes that the Defendant has a "compelling interest" in a fair trial. Indeed, "[n]o right ranks higher than the right of the accused to a fair trial." Press-Enter. Co. v. Superior Court, 464 U.S. 501, 504 (1984) ("Press-Enter. I"). Martoma has not demonstrated a "substantial probability of prejudice" to his right to a fair trial if sealing and closure are not granted, however.

As an initial matter,

> [p]retrial publicity does not . . . lead in every criminal case to an unfair trial. Recent more highly publicized cases indicate that most potential jurors are untainted by press coverage despite widespread publicity. . . . Thus pervasive publicity, without more, does not automatically result in an unfair trial.

Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Wash., 845 F.2d 1513, 1517 (9th Cir. 1988); see also In re Nat'l Broad. Co., Inc., 828 F.2d 340, 346 (6th Cir. 1987) (noting, in the context of a motion to unseal records of pre-trial proceedings, that "'pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically in every kind of criminal case to an unfair trial'") (quoting Neb. Press Ass'n v. Stuart, 427 U.S. 539, 565 (1976)). "In assessing the prejudicial nature of such publicity, th[e] court looks 'not simply to its effect on individual viewers but to its capacity to inflame and prejudice the entire community.'" Seattle Times Co., 845 F.2d at

1517 (quoting Columbia Broad. Sys., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal., 729

F.2d 1174, 1180 (9th Cir. 1984)). "In other words, the publicity must create a '"pattern

of deep and bitter prejudice" . . . throughout the community.'" Id. (quoting Irvin v.

Dowd, 366 U.S. 717, 727 (1961)).

In considering the level of prejudice Martoma will suffer absent sealing

and closure, it must be acknowledged that there is no direct connection between the Law

School Evidence and the insider trading charges the Defendant faces.[5] The Law School

Evidence relates to events that took place fourteen years ago, and is thus entirely

unrelated to the alleged insider trading that is the subject of the Indictment. Moreover,

the nature of the Law School Evidence is not so inflammatory that it is likely to prejudice

the entire community against Martoma. Indeed, the Law School Evidence is far less

inflammatory than the charges in the Indictment, which have received extensive

publicity. Under these circumstances, this Court cannot find that the Defendant has

demonstrated that "there is a substantial probability of prejudice to a compelling interest

of the defendant" absent sealing and closure.

Even if the Court were to conclude that Martoma has met his burden as to

the first Doe factor, he has not demonstrated that "'reasonable alternatives to closure [and

sealing] cannot adequately protect' the compelling interest that would be prejudiced by

public access." Doe, 63 F.3d at 128 (quoting Press-Enter. II, 478 U.S. at 14). Numerous

courts in high-profile cases have recognized that a thorough voir dire may be adequate to

---

[5] United States v. McVeigh, 940 F. Supp. 1541, 1545, 1567 (D. Colo. 1996), cited by Martoma
(Dec. 6, 2013 Def. Ltr. at 2; Dec. 20, 2013 Def. Ltr. at 2), is thus not on point. In that case, the
court sealed portions of a motion in limine that addressed statements made to FBI agents by
McVeigh's co-defendant – Terry Nichols – regarding McVeigh's role in events leading up to the
Oklahoma City bombing. McVeigh, 940 F. Supp. at 1545, 1567. The statements that were
sealed thus directly related to McVeigh's guilt or innocence.

address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial. See, e.g., Seattle Times Co., 845 F.2d at 1518 (noting that appropriate voir dire is an alternative to sealing, and that the district court should have considered the size of the metropolitan area before "dismiss[ing] the likelihood that an impartial jury could be impaneled through searching voir dire and the use of preemptory challenges"); In re Nat'l Broad. Co., Inc., 828 F.2d at 346 (discussing voir dire as an alternative to sealing and noting that "[i]t is significant that voir dire in some of the most widely covered criminal prosecutions has revealed the fact that many prospective jurors do not follow such news closely and that juries can be empanelled without inordinate difficulty"); In re Nat'l Broad. Co., Inc., 635 F.2d 945, 953 (2d Cir. 1980) ("The opportunity for voir dire examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot fairly decide issues of guilt or innocence."); United States v. Volpe, 42 F. Supp. 2d 204, 218 (E.D.N.Y. 1999) ("Careful voir dire questioning is a recognized and effective tool to uncover bias. Indeed, thorough voir dire examinations have been used in this circuit to produce unbiased juries, even in high-profile cases."); United States v. Yousef, S12 93 CR. 180 (KTD), 1997 WL 411596, at *3 (S.D.N.Y. July 18, 1997) (finding in the World Trade Center bombing case that "a thorough voir dire of potential jurors will be sufficient in detecting and eliminating any prospective jurors prejudiced by pretrial publicity").

Martoma has not explained why voir dire will not permit the Court to identify prospective jurors who may have been exposed to the Law School Evidence and to determine whether such exposure has produced bias.

*    *    *    *

Defendant has not overcome the strong presumption of public access that applies to the motions in limine at issue here. Accordingly, his application for sealing and closure regarding these motions and related submissions must be denied.

## CONCLUSION

Defendant's application for sealing and closure regarding the motions in limine and related submissions concerning the Law School Evidence is denied. The docket will reflect the filing of this memorandum opinion and order, the Government's motion in limine, the Defendant's motion in limine, the Defendant's opposition to the Government's motion in limine, the Government's opposition to the Defendant's motion in limine, the Defendant's December 6, 2013 letter, the Government's December 6, 2013 letter, the Defendant's December 9, 2013 letter, the Government's December 14, 2013 letter, and the Defendant's December 20, 2013 letter as sealed matters, and all of these documents will remain under seal until 9:30 a.m. on December 31, 2013. See In re The Herald Co., 734 F.2d at 102 ("[T]he publicly maintained docket entries should reflect the fact that the motion was filed, the fact that the motion and any supporting or opposing papers were filed under seal, . . . the disposition of the motion, and the fact of [sealing], whether ordered upon motion of a party or by the Court sua sponte."); Haller, 837 F.2d at 87 ("In re The Herald requires . . . that except in extraordinary circumstances the public have a means of learning that a closure or sealing order has been proposed or issued.").

The Court stays immediate disclosure of these materials to permit Defendant to make application to the U.S. Court of Appeals for the Second Circuit for a more extended stay. See United States v. Huntley, 943 F. Supp. 2d 383, 388 (E.D.N.Y. 2013) (staying an order to unseal a sentencing memorandum for twenty-four hours to permit application to the Second Circuit for an extended stay); United States v. Amodeo, No. 92 Civ. 7744 (RPP), 1994 WL

389172, *1 (S.D.N.Y. 1994) (staying an order unsealing documents to allow a party to seek an extended stay from the Second Circuit). If no extension of the stay is sought by 9:30 a.m. on December 31, 2013, all materials referenced above will be unsealed. If Defendant seeks a stay in the Second Circuit, the above-referenced materials will remain under seal pending determination of the motion by the Second Circuit.

Dated: New York, New York
      December 28, 2013

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge